# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF MISSOURI
# SOUTHERN DIVISION

DEREK CHRISTOPHERSON, AND            )
JENNIFER CHRISTOPHERSON,             )
                                     )
                                     )
              Plaintiffs,            )
                                     )
      vs.                            )          Case No. _____
                                     )
ROBERT BUSHNER,                      )
*Serve:*                             )
1303 Desilva Street                  )
Lady Lake, FL 32159                  )
                                     )
AND                                  )
                                     )
CONNIE JO BUSHNER,                   )
*Serve:*                             )
1303 Desilva Street                  )
Lady Lake, FL 32159                  )
                                     )
AND                                  )
                                     )
THE FEDERAL EMERGENCY                )
MANAGEMENT AGENCY,                   )
*Serve:*                             )
Tim Garrison,                        )
United States Attorney for the       )
Western District of Missouri         )
Southern Division                    )
901 E. St. Louis St.,                )
Springfield, MO 65806                )
                                     )
And by Certified Mail                )
500 C Street SW, 8th Floor,          )
Washington, D.C. 20472               )
                                     )
AND                                  )
                                     )
STANTEC, INC.,                       )
*Serve:*                             )
Stantec, Inc.                        )
Stantec Tower,                       )

Page **1** of **32**

10111 – 104 Avenue NW )
Edmonton, Alberta, Canada )
)

Via Central Authority) )
Ministry of Justice and )
Solicitor General )
Office of the Sheriff )
Civil Enforcement )
2nd Floor, 108th Street )
Building )
9942-108 Street )
Edmonton, Alberta T5K 2J5 )
Canada )
)

AND )
)

WS ATKINS, PLC, )
***Serve:*** )
WS Atkins, PLC, )
Euston Tower )
286 Euston Road )
London )
NW1 3AT )
United Kingdom )
)

Via Central Authority )
The Senior Master )
ATTN: Foreign Process Section )
Room E16 )
Royal Courts of Justice )
Strand )
LONDON WC2A 2LL )
)

AND )
)

THE DEWBERRY COMPANIES, )
INC., )
***Serve:*** )
The Dewberry Companies, Inc. )
8401 Arlington )
Fairfax, VA 22031 )
)

Registered Agent: )
CORPORATION SERVICE COMPANY )
100 Shockoe Slip Fl 2 )
Richmond, VA 23219 )

Page **2** of **32**

AND

CORELOGIC, INC.,
***Serve:***
40 Pacifica Avenue, Suite 900
Irvine, CA 91618

INEZ PAHLMANN,
***Serve:***
3498 N US Highway 63
West Plains, MO 65775

AND

MISSOURI,
OZARKS REALTY, INC.,
***Serve:***
Inez Pahlmann,
3498 N US Highway 63
West Plains, MO 65775

AND

JOHN DOE,
***Serve:***
Hold for Service

           Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

## COMPLAINT

**COME NOW** Plaintiffs Derek Christopherson and Jennifer Christopherson (hereinafter "Plaintiffs"), by and through their undersigned counsel, and for their cause of action against the above-named Defendants, state and aver to the Court as follows:

## FACTS COMMON TO ALL COUNTS

1.    Plaintiffs Derek Christopherson and Jennifer Christopherson ("Plaintiffs") are individuals who currently reside in Fargo, North Dakota, and who previously

resided in Tecumseh, Ozark County, Missouri, at all relevant times mentioned herein.

2.    Defendants Robert Bushner and Connie Jo Bushner (the "Bushners") are individuals, husband and wife, who currently reside in the state of Florida, and may be served with process as set forth above. At all times relevant to these causes of action, the Bushners resided in Ozark County, Missouri.

3.    Defendant Federal Emergency Management Agency ("FEMA") is a federal agency of the United States of America, specifically provided for by congressional statute, and the United States government. It may be served with process as set forth above.

4.    Defendant Stantec, Inc. ("Stantec") is, upon information and belief, a Canadian-based professional services corporation, duly authorized to conduct business in, and publicly traded in, the United States of America. Stantec may be served with process as set forth above.

5.    Defendant WS Atkins, PLC ("Atkins"), is, upon information and belief, a United Kingdom-based public limited company, duly authorized to conduct business in, and publicly traded in, the United States of America. Atkins may be served with process as set forth above.

6.    Defendant The Dewberry Companies, Inc. ("Dewberry") is, upon information and belief, a Virginia corporation, and may be served with process as set forth above.

7.    Collectively, Stantec, Atkins, and Dewberry are presently, and at all pertinent times mentioned herein were, engaged in a joint venture, known as the Strategic Alliance for Risk Reduction ("STARR").

8.  STARR advertises that its joint venture is "comprised of three proven leaders in DFIRM mapping, risk assessment, risk communication, and mitigation planning." Moreover, STARR advertises that its partners "work as one in a common vision and purpose to reduce the loss of life and property caused by floods. STARR is helping FEMA and its partners create a flood-savvy nation, one community at a time…. through leveraging ongoing partnerships and inspiring local action to mitigate flood risk."

9.  In 1968, Congress passed the National Flood Insurance Act ("NFIA"), codified at 42 U.S.C. § 4001, *et seq.*, with the purpose of instituting "a reasonable method of sharing the risk of flood losses" by subsidizing flood insurance through private insurers. 42 U.S.C. §§ 4001(a)-(b).

10. NFIA established the National Flood Insurance Program ("NFIP"), which is administered by [FEMA and] supported by the federal treasury, which pays for claims that exceed the revenues collected by private insurers from flood insurance premiums.

11. The NFIP includes two separate types of government-financed flood insurance. Under the first, known as the "Direct Program" or the "Government Program," NFIP policyholders are insured directly by FEMA. In the Direct Program, the government runs the NFIP itself—offering federally underwritten policies—with the potential for administrative assistance from private insurers.

12. Under the second program (the "WYO Program"), which is authorized under 42 U.S.C. § 4081(a), NFIP policyholders are insured by participating WYO

companies. Although FEMA may issue policies directly under the Government Program, more than 90% are written by WYO companies.

13. Under the WYO Program, private insurance companies have the authority to sell federally backed Standard Flood Insurance Policies (SFIPs) pursuant to the procedures outlined in 44 C.F.R. § 62.23. A SFIP is a "flood insurance policy issued by the Federal Insurance Administrator or an insurer pursuant to an arrangement with the Federal Insurance Administrator pursuant to Federal statutes and regulations." 44 C.F.R. § 59.1. Specifically, the Code of Federal Regulations provides that "[a] WYO Company is authorized to arrange for the issuance of flood insurance in any amount within the maximum limits of coverage specified in ... [the federal regulations]" and "shall arrange for the adjustment, settlement, payment and defense of all claims arising from policies of flood insurance it issues under the Program." 42 C.F.R. § 62.23(c), (d).

14. In addition to its function as insurer and backer under the NFIP, FEMA is required to identify flood-prone areas, publish flood-risk-zone data, and revise that data as needed. Any federally regulated lender making a loan secured by improved real estate located in a designated flood-risk zone must as a condition of making the loan require the purchase of insurance through the NFIP.

15. As part of the NFIP, FEMA publishes Flood Insurance Rate Maps ("FIRM"), which are official maps of communities "delineat[ing] both the special hazard areas and the risk premium zones applicable to the community." 44 C.F.R. § 59.1. In addition, FEMA publishes and promulgates the Standard Flood Hazard Determination Form ("SFHDF"), which serves a similar function to the FIRMs.

FEMA is responsible for development, updates, and making the FIRMs and SFHDF available to users.

16. The purpose of the SFHDF is twofold — First, they are used to educate and inform individuals on the flooding risk of real estate. Second, they are used to assess premiums for flood insurance policies regulated by the NFIP.

17. Defendant John Doe is, upon information and belief, an individual residing in Missouri, and an agent of FEMA and/or STARR, and whose identity is currently unknown to Plaintiffs, but which Plaintiffs expect to discover in the course of litigation.

18. Defendant CoreLogic, Inc. ("Corelogic") is, upon information and belief, a Delaware corporation, with its principal place of business located in Irvine, California, and may be served with process as set forth above.

19. Defendant Inez Pahlmann ("Pahlmann") is a resident of Howell County, Missouri and is a licensed real estate agent in Missouri. Pahlmann may be served with process as set forth above.

20. Defendant Missouri Ozarks Realty, Inc. ("Missouri Ozarks Realty") is a Missouri close corporation, who may be served as set forth above, and whose broker, Pahlmann, was the real estate agent for the Bushners.

21. At all pertinent times mentioned herein, Pahlmann acted as agent for Missouri Ozarks Realty, and all acts and/or omissions alleged herein were made within the course and scope of her employment.

22. The Court has personal jurisdiction over Defendants FEMA, Doe, Pahlmann, and Missouri Ozarks Realty, in that the same are domiciled within the forum.

23. The Court has personal jurisdiction over the STARR Defendants for the reason the same have purposefully availed themselves to the forum, and have sufficient minimum contacts with the forum, in that the STARR Defendants specifically provided hazard identification and mapping in connection with FEMA, and acted as general contractor for FEMA, as will be detailed herein.

24. The Court has personal jurisdiction over CoreLogic for the reason the same has purposefully availed itself to the forum, and has sufficient minimum contacts with the forum, in that CoreLogic provided flood risk certificates to consumers in the state of Missouri, and more specifically Plaintiffs, as will be detailed herein.

25. The Court has subject matter jurisdiction over Plaintiffs' claims presented under the Federal Tort Claims Act, pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1346, *et. seq.*

26. The Court has supplemental subject matter jurisdiction over Plaintiffs' remaining claims pursuant to 28 U.S.C. § 1367(a).

27. Venue is proper in the premises pursuant to 28 U.S.C. § 1402(b), in that the all acts and omissions, as alleged herein, occurred in Ozark County, Missouri and an agency of the United States of America is a party Defendant.

28. Defendant FEMA has waived its right to claim sovereign immunity pursuant to 28 U.S.C.A. §§ 1346, 2671, *et. seq.*, the Federal Tort Claims Act.

29. Plaintiffs have exhausted their administrative remedies by way of demand letter dated February 15, 2019, and sent by certified mail, which was denied by FEMA on June 6, 2019, attached hereto as "Exhibit A."

30.    In March 2017, Plaintiffs purchased a parcel of property near the North Fork

River (otherwise known as the North Fork of the White River) and/or Norfork

Lake ("the Lake") in Tecumseh, Ozark County, Missouri, with a specific address

of 1109 Tecumseh Creek Road, Tecumseh, Ozark County, Missouri 65760 ("the

Property").

31.    The Property has a legal description as follows:

*All of a fraction of the N1/2 of the S1/2 of the SW1/4 of Section 9, Township 22
North, Range 12 West, described as follows: Commencing at the Southwest
corner of said tract, run thence South 88 degrees 52 minutes East, along the
South line of said N1/2 of the S1/2 of the SW1/4 of Section 9, to a point in the
center of the (New) County Road as the same is now located, for a place of
beginning; thence North, following the centerline of said Public road, 150 feet,
thence West 100 feet, thence South 150 feet to the South line of said N1/2 of the
S1/2 of the SW1/4 of Section 9, thence East on said line 100 feet to the place of
beginning;*

*Also Commencing at the Southwest corner of the N1/2 of the S1/2 of the SW1/4
of Section 9, Township 22 North, Range 12 West, and running thence South 88
degrees 52 minutes East along the South line of the N1/2 of the S1/2 of the
SW1/4 of Section 9, to a point in the center of the new county road as the same
is now located; thence North 15 degrees 28 minutes West following the center
line of said public road a distance of 150 for a place of beginning; thence North
15 degrees 28 minutes West 65.2 feet; thence North 5 degrees West 34.8 feet;
thence West 110 feet; thence South 9 degrees 30 minute East 100 feet; thence
East 110 feet to the place of beginning;*

*ALSO All of a fraction of the N1/2 of the S1/2 of the SW1/4 of Section 9,
Township 22 North, Range 12 West, described as follows: Commencing at the
Southwest corner of said tract, run thence South 88 degrees 52 minutes East
along the south line of said N1/2 of the S1/2 of the SW1/4 of Section 9 to a point
in the center of the (New) County Road as the same is now located; thence North
02 degrees 21 minutes 32 seconds West 150 feet; thence North 89 degrees 02
minutes 20 seconds West 100 feet; thence South 02 degrees 21 minutes 35
seconds West 56 feet, this being the POINT OF BEGINNING: thence South 02
degrees 21 minutes 35 seconds East 45 feet to a point; thence West 40 feet (this
point being the vertex of a triangle); thence angle northeasterly 58 feet to the
POINT OF THE BEGINNING.  ALSO another small tract described as
commencing at the beginning point as described above and thence South 02
degrees 21 minutes 35 seconds East 45 feet for a point of beginning; thence
continue South 02 degrees 21 minutes 35 seconds East 38 feet; thence angle*

*northwesterly 60 feet to the vertex of the triangle described above; thence East 40 feet to the point of beginning, Situated in Ozark County, Missouri.*

32. There is a house on the Property ("the Home") which was built by the Bushners in 2007, and which incorporated some portions of a prior house on site which, upon information and belief, was built in the 1890s.

33. Plaintiffs closed on the Property on March 8, 2017 and began living at the Home on March 22, 2017.

34. Plaintiff Derek Christopherson, prior to purchasing the Property and Home, had experience as a real estate agent, a mortgage loan originator, a State Farm insurance agent, and had sold flood insurance coverage to insureds in North Dakota within the NFIP for FEMA.

35. Prior to purchasing the Property and Home, Plaintiff Derek Christopherson was familiar with FEMA flood insurance, flood certificates, FIRMs, and the SFHDF from FEMA.

36. Plaintiffs performed extensive due diligence prior to purchasing the Property and Home, as they reviewed the FEMA flood certificate, FIRMs, the SFHDF, and performed additional investigation to ensure the Property and Home were not in a Special Flood Hazard Area ("SFHA") and were not below the 100-year flood line of the Base Flood Elevation ("BFE") for the Lake and/or River(s).

37. The BFE is the computed elevation to which floodwater is anticipated to rise during the base flood.

38. In 2017, Plaintiffs understood, based on their extensive independent investigation, background knowledge of the subject matter, and all documentation provided and reviewed by them, specifically the FIRMs, SFHDF,

and other sources, that the BFE for the Lake/River near the location of the Property and Home was above the 100 Year BFE, meaning the Property and Home were an exceptionally low risk for flooding.

39. The 100 Year BFE meant the Home and Property was above the 100-year flood line for the Lake and would not expect a flood any more frequently than once every one hundred years.

40. In addition to the information reviewed from FEMA, Plaintiffs obtained, reviewed, and relied on the official Flood Certificate from CoreLogic, which specifically indicated the Home and Property were outside the 100-year flood zone; the Flood Certificate also specifically indicated there had been no Letter of Map Amendment ("LOMA") or Letter of Map Change ("LOMC") for the Home and Property at any time. The official Certificate also specified the Home and Property were not, and had never been, located within a designated Special Flood Hazard Area.

41. The Plaintiffs precisely verified the Home and Property had never received any changes and/or amendments pertaining to the BFE and/or water elevation expectancy by way of any LOMA/LOMC.

42. The Bushners, as sellers of the Home and Property to Plaintiffs, made specific and repeated representations to Plaintiffs that the Property and Home were not in a FEMA flood zone, had never flooded, and were not at risk for flooding.

43. Prior to closing on the Home and Property, Plaintiffs demanded a Sellers Disclosure Statement be filled out by the Bushners.

44. Pahlmann and Missouri Ozarks Realty, the real estate agent for the Bushners, represented to Plaintiffs that the Property and Home had never flooded, and that sellers of real estate in Missouri did not regularly fill out Sellers Disclosure Statements; Plaintiffs were instead told all disclosures under the law were made within the confines of the Real Estate Sales Contract.

45. Forty days after relocating their family to this Property, specifically in April 2017, a flood on the Lake raised flood waters onto the Property and destroyed the Home and all the family's personal property.

46. After the Home was destroyed by the flood in April 2017, Plaintiffs learned the information they relied on from FEMA prior to their purchase was woefully inaccurate, in that during 2010, the BFE of the Lake at or near the location of the Property and Home was lowered by more than 34 feet at one time by either FEMA or their contractor, STARR.

47. Prior to the 2010 BFE change ("the 2010 Change"), the BFE of the Property and Home near the Lake was 615 feet; this meant the entire Home (the foundation of which is located at approximately 581.8 feet) was within the 100-year flood zone, and therefore at a substantially greater risk for flooding.

48. After the 2010 Change, the BFE of the Property and Home near the Lake was 581.4 feet; this meant the entire Property and Home (the foundation of which is located at approximately 581.8 feet) was outside the 100-year flood zone, and therefore at a lesser risk for flooding.

49. The 2010 Change was based on a LOMC/LOMA by FEMA and/or STARR during 2010, which was not reported or depicted on any documents from FEMA, STARR, or CoreLogic.

50. When Plaintiffs purchased the Home and Property in 2017, the SFHDF, FIRMs, and other documentation available to Plaintiffs showed the post-2010 status with the incorrect BFE of 580-581 feet, meaning the Home and Property fell outside the 100-year flood zone, and wrongfully depicted a greatly reduced risk of flooding.

51. The more than 34-foot lowering of the BFE that occurred in 2010 placed the Home approximately two-three inches above the 100-year flood zone area, and wrongfully depicted a greatly reduced risk of flooding.

52. After the closing on the Home and the subsequent flood, Plaintiffs obtained a partially redacted copy of FEMA's 42-page case file pertaining to the Property and the Home ("the Case File").

53. Upon review of the Case File, Plaintiffs learned the United States Army Corps of Engineers ("the Corps") repeatedly told FEMA prior to the 2010 Change that it would *not* be appropriate to modify the BFE at the location of the Home and Property from 615 feet to 580-581 feet; there are repeated instructions and representations from the Corps to FEMA and/or STARR that the 2010 Change should *not* be made.

54. FEMA and/or STARR purposefully ignored the specific instructions and recommendations by the Corps and instead made the 2010 Change, which

moved the Home and Property from inside the 100-year flood zone to outside the 100-year flood zone.

55. The 2010 Change was intentionally and fraudulently made by FEMA and/or STARR, with the specific intent to deceive future purchasers of the Home and Property into believing the Home and Property was outside the 100-year flood zone.

56. The 2010 Change, which moved the Home and Property from inside the 100-year flood zone to outside the zone, made the Home and Property more salable and marketable.

57. As a result of the changed BFE distinction, the Property and Home were placed in the most attractive flood risk designation, which was done to satisfy mortgage lending regulations by allowing a lender to loan money to a borrower without the requirement of flood insurance, which would have not been otherwise available.

58. Even if Plaintiffs had wanted to obtain flood insurance on the Property and Home (which they likely would have), they would have been unable to do so because of the designation it received.

59. At the same time, Plaintiffs learned the Flood Certificate from CoreLogic was false, in that there had in fact been a LOMC/LOMA in 2010 and the LOMC/LOMA had been either negligently or fraudulently omitted from the Flood Certificate.

60. In addition to omitting fact there had been a LOMC/LOMA in 2010, the Flood Certificate also specifically indicated the Home and Property was outside the 100-year flood zone.

Case 6:19-cv-03267-RK   Document 1   Filed 07/26/19   Page 14 of 32

61. The omission of the 2010 LOMA/LOMC by CoreLogic was done intentionally and fraudulently, with the specific intent to deceive future purchasers of the Home and Property into believing the Home and Property was outside the 100-year flood zone.

62. The Bushners had the Home and Property on the market for many years prior to the sale to Plaintiffs, and upon information and belief, had experienced considerable difficulty in selling the Home and Property prior to the purchase of the Home and Property by Plaintiffs.

63. The Bushners regularly, repeatedly, and specifically demanded, requested, and instructed FEMA and/or STARR to make the 2010 Change; upon information and belief, this pressure was placed on FEMA and/or STARR so the Home and Property would be more salable and marketable.

64. The Bushners knew, or should have known with due diligence, that the Property and Home should have been in the 100-year flood zone, and that it would be intentionally misleading and fraudulent for them to suggest or demand, and for FEMA/STARR to follow through with, a LOMA/LOMC which modified the BFE from 615 to 580/581.

65. The Bushners had specific knowledge the Property and Home were subjected to regular flooding, yet failed to provide this information to Plaintiffs, despite being specifically asked by Plaintiffs regarding the flooding potential at the Property and Home.

66. In reliance on the false information provided by FEMA, STARR, and CoreLogic, Plaintiffs purchased the Home and Property without knowledge of the

LOMA/LOMC and with the incorrect understanding that the Home and Property was outside the 100-year flood zone.

67.  Plaintiffs also relied on the representations of Pahlmann and Missouri Ozarks Realty, the real estate agent for the Bushners, when it was represented to them (1) the Property was not in a FEMA flood zone, (2) sellers of real estate do not sign Sellers Disclosure Statements, and (3) instead all disclosures are made within the confines of the Real Estate Sales Contract.

68.  Subsequent to Plaintiffs' learning of the multiple LOMA/LOMCs and the information suggesting "the [H]ome is located within a high risk SFHA" (Special Flood Hazard Area), during 2018, FEMA and STARR again changed the status of the Home and Property ("the 2018 Change"), without informing Plaintiffs.

69.  Moreover, when FEMA and STARR changed the status of the Home and Property back to the pre-2010 status, they intentionally and fraudulently backdated the modification to 2010 to make it appear it had always had a BFE of 615 and that at no time had the property had a BFE of 580/581.

70.  Upon information and belief, the 2018 Change and intentional backdating was done to cover the tracks of all parties involved.

71.  The prior changes by FEMA, STARR, and CoreLogic were made for the benefit of the Bushners.

72.  FEMA now states the Property is classified within the 100-year flood zone (within a Special Flood Hazard Area) because it is below the accurate 615' 100-year BFE.

73. CoreLogic continues to report false information as to the Special Flood Hazard Area and zone of the property.

74. There is no justification, and has never been any justification, for the 2010 Change from 615 feet to 580/581 feet, and such a 34' lowering of the BFE would never be reasonable, appropriate, or feasible.

75. FEMA and STARR's subsequent changes of the BFE has further compounded the fraud perpetuated upon the Plaintiffs by FEMA, STARR, CoreLogic, the Bushners, Pahlmann, and Missouri Ozarks Realty Inc., in that now the Plaintiffs cannot sell the Home and Property to anyone because it is indeed within the 100-year flood zone and has no availability of flood insurance from FEMA.

COUNT I – Fraudulent/Negligent Misrepresentation – The Bushners

**COME NOW** Plaintiffs Derek Christopherson and Jennifer Christopherson, by and through their undersigned counsel, and for Count I of their cause of action against the Bushners, state and aver to the Court as follows:

76. Plaintiffs incorporate by reference each and every preceding paragraph of their Complaint as set forth more fully herein.

77. The Bushners, as sellers of the Home and Property to Plaintiffs, made specific, regular, and repeated representations to Plaintiffs that the Property and Home were not in a FEMA flood zone, had never flooded, and were not at risk for flooding, despite the fact the Bushners knew of the wildly illegal, unprecedented, and fraudulent 2010 Change of the BFE from 615' to 580/581 feet by FEMA and/or STARR.

78. Those representations by the Bushners were false.

Page **17** of **32**

79. The representations by the Bushners were material to Plaintiffs, in that Plaintiffs would not have purchased the Property or the Home if they had known the Property/Home (1) was in a FEMA flood zone and (2) was a flood risk.

80. In the alternative, Plaintiffs would have been required to purchase flood insurance (and would have certainly done so) for the Property/Home if the actual BFE was known.

81. The Bushners had actual knowledge of the falsity of their statements to Plaintiffs.

82. In the alternative, the Bushners, upon the exercise of due diligence, should have known of the falsity of the statements.

83. The Bushners intended that their representations be acted upon, in that they intended for Plaintiffs to purchase the Property and Home from them, which had been on the market for several years.

84. Plaintiffs did not know the statements were false.

85. Plaintiffs relied on the fact the Bushners' representations regarding flooding were truthful, and had an absolute right to rely on the same.

86. As a direct and proximate result of Bushners' fraudulent and/or negligent misrepresentations, the Property and Home flooded and was completely destroyed, including all of Plaintiffs' personal property therein.

87. As a direct and proximate result of Bushners' fraudulent and/or negligent misrepresentations, Plaintiffs are unable to sell, and the Property and Home are presently worthless.

88. As a direct and proximate result of Bushners' fraudulent and/or negligent misrepresentations, Plaintiffs have suffered numerous consequential damages,

Case 6:19-cv-03267-RK   Document 1   Filed 07/26/19   Page 18 of 32

from moving costs to storage fees, and other costs related to the remediation of the Property and Home.

89. As a direct and proximate result of Bushners' fraudulent and/or negligent misrepresentations, Plaintiffs have suffered damages, the exact amount of which has not been determined at this time.

90. Such conduct by the Bushners was intentional, fraudulent, willful, and with an evil motive or reckless indifference to the rights of Plaintiffs, as purchasers of the Property and Home, thereby entitling Plaintiffs to punitive damages.

91. Punitive damages in the amount of $1,500,000 are sufficient to punish the Bushners for their actions and deter other similarly situated from behaving the same, or in a similar manner, in the future.

**WHEREFORE**, Plaintiffs pray this Court for its Judgment on Count I of their Complaint for damages as are fair and reasonable, punitive damages as are fair and reasonable, costs and interest as provided by law, and any other and further relief as the Court deems just and proper in the premises.

### COUNT II – Fraudulent/Negligent Misrepresentation/Federal Tort Claims Act – FEMA, STARR, John Doe

**COME NOW** Plaintiffs Derek Christopherson and Jennifer Christopherson, by and through their undersigned counsel, and for Count II of their cause of action against FEMA and the STARR Defendants, state and aver to the Court as follows:

92. Plaintiffs incorporate by reference each and every preceding paragraph of their Complaint as set forth more fully herein.

93. At all pertinent times mentioned herein, FEMA was responsible for creating, maintaining, promulgating, and distributing its flood maps, including the SFHDF and FIRM, and ensuring the data therein was accurate for the public.

94. At all pertinent times mentioned herein, the STARR Defendants acted in conjunction with FEMA agents, and as the general contractor for FEMA Region VII (including Missouri), in creating said maps.

95. Upon information and belief, John Doe represents the individual or individuals responsible for the 2010 Change, as detailed above.

96. Defendants FEMA, STARR, and Doe made representations to Plaintiffs that the BFE for the Property and Home was 580-581 feet and outside the 100-year flood zone.

97. Moreover, numerous agents and representatives from FEMA and STARR repeatedly and affirmatively represented to Plaintiffs the flood maps, including the SFHDF and FIRM, were an accurate representation of Plaintiffs' flood risk and contained accurate data.

98. Those representations were false, in that the actual, proper BFE for the Property and Home should have been 615 feet and within the 100-year flood zone.

99. The representations were material to Plaintiffs, in that Plaintiffs would not have purchased the Property or the Home if they had known the Property/Home (1) was in a FEMA flood zone, and (2) was a substantial flood risk.

100. In the alternative, Plaintiffs would have been required to purchase flood insurance for the Property/Home (and certainly would have done so) if the actual BFE was known.

101. FEMA, STARR, and Doe had actual knowledge the representations above were false, in that they had received numerous correspondence and emails from the Army Corps of Engineers instructing them not to make the change in BFE and the true BFE should be 615 feet and within the 100 year flood zone.

102. In the alternative, FEMA, STARR, and Doe should have known, with the exercise of any diligence whatsoever, that the representations were false.

103. FEMA, STARR, and Doe intended that their representations be acted upon, in that they intended for Plaintiffs to purchase the Property and Home.

104. Plaintiffs did not know the statements were false.

105. Plaintiffs relied on the fact FEMA, STARR, and Doe's representations were accurate and truthful, and had an absolute right to rely on the same.

106. As a direct and proximate result of FEMA, STARR, and Doe's fraudulent and/or negligent misrepresentations, the Property and Home flooded and was completely destroyed, including all of Plaintiffs' personal property therein.

107. As a direct and proximate result of FEMA, STARR, and Doe's fraudulent and/or negligent misrepresentations, Plaintiffs are unable to sell, and the Property and Home are presently worthless.

108. As a direct and proximate result of FEMA, STARR, and Doe's fraudulent and/or negligent misrepresentations, Plaintiffs have suffered numerous consequential

Case 6:19-cv-03267-RK   Document 1   Filed 07/26/19   Page 21 of 32

damages, from moving costs to storage fees, and other costs related to the remediation of the Property and Home.

109. As a direct and proximate result of FEMA, STARR, and Doe's fraudulent and/or negligent misrepresentations, Plaintiffs have suffered damages, the exact amount of which has not been determined at this time.

110. FEMA is liable under the provisions of the Federal Tort Claims Act, in that they are employed by, or an agency of, the United States of America, and shall be liable for injury to, or loss of, property or for personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government, acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable. 28 U.S.C. § 1346, *et. seq.*

111. At all pertinent times mentioned herein, Defendant Doe was acting within the course and scope of his employment with FEMA.

112. In the alternative, should the Federal Tort Claims Act not apply to the STARR Defendants and/or Defendant Doe, the STARR Defendants are liable at common law for their fraudulent/negligent misrepresentations as are set forth above.

**WHEREFORE**, Plaintiffs pray this Court for its Judgment on Count II of their Complaint for damages as are fair and reasonable, costs and interest as provided by law, and any other and further relief as the Court deems just and proper in the premises.

<u>COUNT III – Violation of 42 U.S.C. §§ 1983, 1986 – John Doe</u>

**COME NOW** Plaintiffs Derek Christopherson and Jennifer Christopherson, by and through their undersigned counsel, and for Count III of their cause of action against John Doe, state and aver to the Court as follows:

113. Plaintiffs incorporate by reference each and every preceding paragraph of their Complaint as set forth more fully herein.

114. 28 U.S.C. § 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to **the deprivation of any rights, privileges, or immunities secured by the Constitution and laws**, shall be liable to the party injured in an action at law

115. That all actions taken by John Doe, were taken under the color of federal law.

116. That Plaintiffs have a Constitutional and statutory right to their ownership of the Property and Home.

117. That the actions John Doe, as set forth in Count II above, rise to the level of an unconstitutional taking of Plaintiffs' Property and Home without any semblance of either procedural or substantive due process and without any form of redress.

118. Moreover, 28 U.S.C. § 1985 provides that "[i]f two or more persons in any State or Territory conspire…for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the

laws… the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

119. 28 U.S.C. § 1986 provides that "every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, **neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured**, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case."

120. The Bushners conspired to fraudulently deprive Plaintiffs of their property rights by purposefully misrepresenting the BFE to Plaintiffs, by alleging the Property and Home were not in a FEMA flood zone, and John Doe had actual knowledge of the same, and purposefully neglected to prevent the commission of the Bushners fraud—in fact, FEMA, by and through Doe, helped perpetuate the fraud.

121. As a direct and proximate result of John Doe's actions, the Property and Home flooded and was completely destroyed, including all of Plaintiffs' personal property therein.

122. As a direct and proximate result of John Doe's actions, Plaintiffs are unable to sell, and the Property and Home are presently worthless.

123. As a direct and proximate result of John Doe's actions, Plaintiffs have suffered numerous consequential damages, from moving costs to storage fees, and other costs related to the remediation of the Property and Home.

124. As a direct and proximate result of John Doe's actions, Plaintiffs have suffered damages, the exact amount of which has not been determined at this time.

125. Plaintiffs are entitled to their reasonable attorney's fees by statute.

**WHEREFORE**, Plaintiffs pray this Court for its Judgment on Count III of their Complaint for damages as are fair and reasonable, their reasonable attorney's fees, costs and interest as provided by law, and any other and further relief as the Court deems just and proper in the premises.

<u>COUNT IV – Fraudulent/Negligent Misrepresentation – CoreLogic</u>

**COME NOW** Plaintiffs Derek Christopherson and Jennifer Christopherson, by and through their undersigned counsel, and for Count IV of their cause of action against CoreLogic, state and aver to the Court as follows:

126. Plaintiffs incorporate by reference each and every preceding paragraph of their Complaint as set forth more fully herein.

127. CoreLogic is a private company engaged in, among other things, the business of providing flood plain data to its consumers.

128. CoreLogic advertises that it provides its clients with "[a]ccurate Flood Zone determinations that help guarantee flood compliance" and that in utilizing their services to determine flood zones, it is 'more important than ever to expect accuracy and dependability from your vendors."

129. CoreLogic was hired by Plaintiffs to provide a determination as to whether the Property and the Home were a flood risk and whether they were in a flood zone. In doing so, CoreLogic provided Plaintiffs with a "Flood Certificate," which specifically indicated and represented to Plaintiffs that the Home and Property were outside the 100-year flood zone; the Flood Certificate also specifically indicated there had been no LOMA or LOMC for the Home and Property at any time. The official Certificate also specified that this home and property is not and had never been located within a designated Special Flood Hazard Area.

130. These representations were false, in that the Property was in the flood zone, was a serious risk for flooding, and there had been multiple LOMA/LOMCs issued for the Property, as set forth above.

131. CoreLogic had actual knowledge that there had been multiple LOMA/LOMCs issued for the Property, and knew or should have known that the Property was in a flood zone and/or posed a flood risk.

132. In the alternative, CoreLogic, upon the exercise of due diligence, should have known of the falsity of the statements.

133. The representations were material to Plaintiffs, in that Plaintiffs would not have purchased the Property or the Home if they had known the Property/Home (1) was in a FEMA flood zone, and (2) was a substantial flood risk.

134. In the alternative, Plaintiffs would have been required to purchase flood insurance for the Property/Home (and certainly would have done so) if the actual BFE was known.

135. CoreLogic intended that their representations be acted upon, in that they intended for Plaintiffs to use their services and to purchase the Property and Home.

136. Plaintiffs did not know the statements were false.

137. Plaintiffs relied on the fact that the representations regarding flooding were truthful, and had an absolute right to rely on the same.

138. As a direct and proximate result of CoreLogic's fraudulent and/or negligent misrepresentations, the Property and Home flooded and were completely destroyed, including all of Plaintiffs' personal property therein.

139. As a direct and proximate result of CoreLogic's fraudulent and/or negligent misrepresentations, Plaintiffs are unable to sell, and the Property and Home are presently worthless.

140. As a direct and proximate result of CoreLogic's fraudulent and/or negligent misrepresentations, Plaintiffs have suffered numerous consequential damages, from moving costs to storage fees, and other costs related to the remediation of the Property and Home.

141. As a direct and proximate result of CoreLogic's fraudulent and/or negligent misrepresentations, Plaintiffs have suffered damages, the exact amount of which has not been determined at this time.

**WHEREFORE**, Plaintiffs pray this Court for its Judgment on Count IV of their Complaint for damages as are fair and reasonable, costs and interest as provided by law, and any other and further relief as the Court deems just and proper in the premises.

Case 6:19-cv-03267-RK   Document 1   Filed 07/26/19   Page 27 of 32

<u>COUNT V – Missouri Merchandising Practices Act – CoreLogic</u>

**COME NOW** Plaintiffs Derek Christopherson and Jennifer Christopherson, by and through their undersigned counsel, and for Count V of their cause of action against CoreLogic, state and aver to the Court as follows:

142.    Plaintiffs incorporate by reference each and every preceding paragraph of their Complaint as set forth more fully herein.

143.    That as a result of one or more of the actions and representations set forth in Count IV above, CoreLogic has engaged in one or more of the following:

      a.    A deception;

      b.    A fraud;

      c.    A false pretense;

      d.    A material misrepresentation;

      e.    An unfair practice; or

      f.    An omission or concealment of a material fact.

144.    All of the actions above constitute an "act declared unlawful" under the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.020, *et. seq.*

145.    Said actions, representations, or omissions were made in connection with the sale or advertisement of goods or services in trade or commerce.

146.    As a result of these unlawful acts, Plaintiffs have suffered an ascertainable loss of money or property, namely the damage of their real and personal property as a result of the flooding.

147.    Plaintiffs engaged the services of CoreLogic, for personal, family, or household purposes.

148. As a direct and proximate result of CoreLogic's fraudulent and/or negligent misrepresentations, the Property and Home flooded and were completely destroyed, including all of Plaintiffs' personal property therein.

149. As a direct and proximate result of CoreLogic's fraudulent and/or negligent misrepresentations, Plaintiffs are unable to sell, and the Property and Home are presently worthless.

150. As a direct and proximate result of CoreLogic's fraudulent and/or negligent misrepresentations, Plaintiffs have suffered numerous consequential damages, from moving costs to storage fees, and other costs related to the remediation of the Property and Home.

151. As a direct and proximate result of CoreLogic's fraudulent and/or negligent misrepresentations, Plaintiffs have suffered damages, the exact amount of which has not been determined at this time.

152. Plaintiffs are entitled to their attorney's fees pursuant to statute.

**WHEREFORE**, Plaintiffs pray this Court for its Judgment on Count V of their Complaint for damages as are fair and reasonable, for their reasonable attorney's fees, costs and interest as provided by law, and any other and further relief as the Court deems just and proper in the premises.

<u>COUNT VI – Fraudulent/Negligent Misrepresentation – Inez Pahlmann and Missouri Ozarks Realty</u>

**COME NOW** Plaintiffs Derek Christopherson and Jennifer Christopherson, by and through their undersigned counsel, and for Count VI of their cause of action against Pahlmann and Missouri Ozarks Realty, state and aver to the Court as follows:

153. Plaintiffs incorporate by reference each and every preceding paragraph of their Complaint as set forth more fully herein.

154. Pahlmann, as the realtor and agent for the Bushners, represented to Plaintiffs the Property and home were not a flood risk.

155. Pahlmann also represented to Plaintiffs that sellers of real estate in Missouri did not regularly fill out Sellers Disclosure Statements; Plaintiffs were instead told all disclosures under the law were made within the confines of the Real Estate Sales Contract itself.

156. These representations were false.

157. The representations were material to Plaintiffs, in that Plaintiffs would not have purchased the Property or the Home if they had known the Property/Home (1) was in a FEMA flood zone, and (2) was a substantial flood risk.

158. Moreover, if Plaintiffs had known they had the ability to obtain Sellers Disclosure Statements from the Bushners, they would have done so.

159. In the alternative, Plaintiffs would have been required to purchase flood insurance for the Property/Home if the actual BFE was known.

160. Pahlmann had actual knowledge of the falsity of her statements to Plaintiffs, in that she was a realtor and knew of the requirements under Missouri law and knew the Property was a flood risk.

161. In the alternative, Pahlmann, upon the exercise of due diligence, should have known of the falsity of the statements.

162. Pahlmann intended that her representations be acted upon, in that she intended for Plaintiffs to purchase the Property and Home from the Bushners, which had

Case 6:19-cv-03267-RK   Document 1   Filed 07/26/19   Page 30 of 32

been on the market for several years, for which she would have received a commission from the sale.

163. Plaintiffs did not know the statements were false.

164. Plaintiffs relied on the fact Pahlmann's representations were truthful, and had an absolute right to rely on the same.

165. At all pertinent times mentioned herein, Pahlmann acted as an agent, representative and employee of Defendant Missouri Ozarks Realty, and acted within the course and scope of her employment, and therefore Defendant Missouri Ozarks Realty is liable for the acts of Pahlmann as alleged herein under the doctrine of *respondeat superior*.

166. As a direct and proximate result of Pahlmann's and Missouri Ozarks Realty's fraudulent and/or negligent misrepresentations, the Property and Home flooded and was completely destroyed, including all of Plaintiffs' personal property therein.

167. As a direct and proximate result of Pahlmann's and Missouri Ozarks Realty's fraudulent and/or negligent misrepresentations, Plaintiffs are unable to sell, and the Property and Home are presently worthless.

168. As a direct and proximate result of Pahlmann's and Missouri Ozarks Realty's fraudulent and/or negligent misrepresentations, Plaintiffs have suffered numerous consequential damages, from moving costs to storage fees, and other costs related to the remediation of the Property and Home.

169. As a direct and proximate result of Pahlmann's and Missouri Ozarks Realty's fraudulent and/or negligent misrepresentations, Plaintiffs have suffered damages, the exact amount of which has not been determined at this time.

170. Such conduct by Pahlmann and Missouri Ozarks Realty was intentional, fraudulent, willful, and with an evil motive or reckless indifference to the rights of Plaintiffs, as purchasers of the Property and Home, thereby entitling Plaintiffs to punitive damages.

171. Punitive damages in the amount of $1.5 million are sufficient to punish Pahlmann and Missouri Ozarks Realty for their actions and deter other similarly situated from behaving the same, or in a similar manner, in the future.

**WHEREFORE**, Plaintiffs pray this Court for its Judgment on Count VI of their Complaint for damages as are fair and reasonable, punitive damages as are fair and reasonable, costs and interest as provided by law, and any other and further relief as the Court deems just and proper in the premises.

LOWTHER JOHNSON
Attorneys at Law, LLC

By : _____
Glenn P. Green
Missouri Bar Number 40921
Kory D. Stubblefield
Missouri Bar Number 58979
N. Austin Fax
Missouri Bar Number 68060
901 St. Louis St , 20th Floor
Springfield, MO. 65806
Telephone : 417-866-7777
Fax : 417-866-1752
ggreen@lowtherjohnson.com
kory@lowtherjohnson.com
afax@lowtherjohnson.com
*Attorneys for Plaintiffs*