IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | |
|---|---|
| DEREK CHRISTOPHERSON, JENNIFER CHRISTOPHERSON, | ) ) ) |
| Plaintiffs, | ) ) ) Case No. 6:19-03267-CV-RK |
| v. | ) ) |
| ROBERT BUSHNER, CONNIE JO BUSHNER, FEDERAL EMERGENCY MANAGEMENT AGENCY, INEZ PAHLMANN, MISSOURI OZARKS REALTY, INC., JOHN DOE, STANTEC CONSULTING SERVICES, INC., ATKINS NORTH AMERICA, INC., DEWBERRY ENGINEERS, INC.,and CORELOGIC FLOOD SERVICES, LLC, | ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## ORDER

Before the Court are various Defendants' motions to dismiss (Docs. 33, 48, 49, 50, 53); Plaintiffs' motion for leave to file a second amended complaint (Doc. 75); and Plaintiffs' motion for default judgment (Doc. 46). After careful consideration and for the reasons below, the claims against Defendants Federal Emergency Management Agency ("FEMA"), John Doe, Stantec Consulting Services, Inc. ("Stantec"), Atkins North America, Inc. ("Atkins"), and Dewberry Engineers, Inc. ("Dewberry")[1] are **DISMISSED**; Plaintiffs' motion for leave to amend the complaint (Doc. 75) is **DENIED**; the case is **DISMISSED** for lack of subject-matter jurisdiction; and the remaining motions are **DENIED as moot**.

## Background

The Court draws the following background from the allegations in the First Amended Complaint. (Doc. 31.) In March 2017, Plaintiffs Derek and Jennifer Christopherson bought a home from Defendants Robert and Connie Jo Bushner. The home was near a river and a lake, so Plaintiffs, before purchasing the house, wanted to confirm the property was not in a 100-year flood

---

[1] The Court will refer to Stantec, Atkins, and Dewberry collectively as "STARR," which stands for "Strategic Alliance for Risk Reduction."

plain. Specifically, Plaintiffs obtained documents from FEMA stating that the home was not in a 100-year flood plain.

Plaintiffs also obtained a "Flood Certificate" from Defendant Corelogic Flood Services, LLC ("Corelogic"). The Flood Certificate allegedly stated that, not only was the home outside the 100-year flood plain, but also FEMA had never issued a "Letter of Map Amendment" ("LOMA") or "Letter of Map Change" ("LOMC") for the property. Furthermore, the Bushners, who owned the property, and their realtors (Defendants Inez Pahlman and Missouri Ozarks Realty, Inc.) allegedly told Plaintiffs the following: (1) the property had never flooded; (2) it was not in a FEMA flood zone; (3) sellers of real estate do not sign sellers' disclosure statements; and (4) all disclosures are made in the real estate sales contract. In reliance on these documents and oral statements, Plaintiffs bought the property in March 2017 without obtaining flood insurance. Forty days later, the home was destroyed by a flood.

Plaintiffs then discovered there was a floodplain map change (i.e., a LOMA or LOMC) for the property in 2010. According to Plaintiffs, the 2010 change lowered the Base Flood Elevation ("BFE") of the property by 34 feet, which recategorized the house from within the 100-year flood plain to outside it. Plaintiffs claim this change was not disclosed on any documents from Corelogic, FEMA, or STARR, which served as FEMA's contractor.

In 2018, FEMA and STARR then allegedly changed the designation for the property back to its pre-2010 status—i.e., placing the house within the 100-year floodplain—and allegedly backdated documents to suggest the BFE had never changed. Plaintiffs claim the correct BFE for the property places the house within the 100-year floodplain; they would not have bought the property if they had known this; and the 2018 recategorization back to within the 100-year floodplain now makes it impossible for them to sell the property.

The First Amended Complaint (Doc. 31) alleges the following claims:

1. Fraudulent/negligent misrepresentation against the Bushners (Count I);
2. Fraudulent/negligent misrepresentation/Federal Tort Claims Act ("FTCA") against FEMA, STARR, and John Doe (as an agent of FEMA or STARR) (Count II);
3. Violations of 42 U.S.C. §§ 1983, 1985, and 1986 against John Doe (Count III);
4. Fraudulent/negligent misrepresentation against Corelogic (Count IV);
5. Violations of the Missouri Merchandising Practices Act against Corelogic (Count V); and
6. Fraudulent/negligent misrepresentation against the Bushners' realtors (Count VI).

2

Plaintiffs also request leave to add the following claims to the case (*see* Doc. 75-1):

7. Negligence under the FTCA against FEMA (proposed Count VII);
8. Inverse condemnation/taking against FEMA (proposed Count VIII); and
9. Prima facie tort under the FTCA against FEMA (proposed Count IX).

The following motions are before the Court:

- FEMA's motion to dismiss for lack of jurisdiction based on sovereign immunity (Doc. 33);
- Plaintiffs' motion for leave to file a Second Amended Complaint (Doc. 75);
- Atkins's and Stantec's motion to dismiss for failure to state a claim under the doctrine of "obstacle preemption" (Doc. 53);
- Dewberry's motion to dismiss for failure to state a claim, on the ground that it was not a member of STARR when the alleged misrepresentations occurred (Doc. 50);
- Plaintiffs' motion for default judgment against the Bushners for failing to respond to the First Amended Complaint (Doc. 46); and
- The Bushners' motions to dismiss for failure to give them notice of the First Amended Complaint (Docs. 48, 49).

Pending a ruling on these motions, the Court stayed the scheduling order. (Doc. 88, 104.) All motions are now fully briefed and ready for decision.[2]

## Discussion

### I. Claims Against FEMA

In Count II, Plaintiffs allege claims against FEMA and others for "Fraudulent/Negligent Misrepresentation/Federal Tort Claims Act." (Doc. 31 at 18-21.) Plaintiffs also seek leave to add claims against FEMA for negligence under the FTCA (proposed Count VII), inverse condemnation/taking (proposed Count VIII), and prima facie tort under the FTCA (proposed Count IX). (Doc. 75-1 at 30-34.)

All of these claims are barred by the Flood Control Act of 1928's sovereign immunity provision. 33 U.S.C. § 702c. But even if that were not the case, these claims are also barred for several alternative reasons. Specifically, the FTCA claims against FEMA in Count II and proposed Count VII fall within the "misrepresentation exception" to the FTCA's sovereign immunity waiver

---

[2] STARR has requested oral argument. This request is **DENIED** because no party has invoked this Court's policy of allowing oral argument for lawyers fewer than six years out of law school, and the Court does not believe oral argument is necessary.

and are barred by the more general sovereign immunity enjoyed by government agencies. 28 U.S.C. § 2680(h). Furthermore, all of Plaintiffs' FTCA claims (Count II and proposed Counts VII and IX) also fall within the "discretionary function" exception to the FTCA's immunity waiver. 28 U.S.C. § 2680(a). The only remaining claim if § 702c of the Flood Control Act did not apply would be proposed Count VIII, for inverse condemnation/taking, but the Court of Federal Claims has exclusive jurisdiction over this claim under the Tucker Act. 28 U.S.C. § 1491.

### A. Legal Standard Regarding Sovereign Immunity

Sovereign immunity is a threshold jurisdictional issue. *Amerind Risk Mgmt. Corp. v. Malaterre*, 633 F.3d 680, 686 (8th Cir. 2011). "A Rule 12(b)(1) motion challenges the federal court's subject matter jurisdiction over a cause of action." *Bass v. United States*, 428 F. Supp. 3d 162, 167 (W.D. Mo. 2019) (quotation marks and citation omitted). Plaintiffs bear the burden of proving jurisdiction exists. *Buckler v. United States*, 919 F.3d 1038, 1044 (8th Cir. 2019) (citation omitted). "It is to be presumed that a cause lies outside [of the Court's] limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).

In deciding a Rule 12(b)(1) motion, a district court is required to distinguish between a facial attack and a factual attack. *Croyle by & through Croyle v. United States*, 908 F.3d 377, 380 (8th Cir. 2018); *see generally Bass*, 428 F. Supp. 3d at 167. "In a facial challenge to jurisdiction, all of the factual allegations concerning jurisdiction are presumed to be true and the motion is successful if the plaintiff fails to allege an element necessary for subject matter jurisdiction." *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). Here, however, FEMA levels a factual attack to jurisdiction. (Doc. 34 at 9 n.2.)

In a factual attack, the Court "may look outside the pleadings to affidavits or other documents." *Moss v. United States*, 895 F.3d 1091, 1097 (8th Cir. 2018). A factual attack does not convert a Rule 12(b)(1) motion into one for summary judgment. *Id.* (citation omitted). Instead, the party invoking federal jurisdiction must prove jurisdictional facts by a preponderance of the evidence. *Id.* "Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case—there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990). "[No presumption of] truthfulness attaches to plaintiff's

allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Titus*, 4 F.3d at 593 n. 1.

### B. Sovereign Immunity Under the Flood Control Act

The Flood Control Act provides that "[n]o liability of any kind shall attach to or rest upon the United States for any damage from or by floods or flood waters at any place . . . ." 33 U.S.C. § 702c. Section 702c applies "only if governmental control of flood waters was a substantial factor in causing the plaintiff's injuries." *Fisher v. U.S. Army Corps of Eng'rs*, 31 F.3d 683, 684-85 (8th Cir. 1994) (applying immunity); *Henderson v. United States*, 965 F.2d 1488, 1492 (8th Cir. 1992) (denying immunity).

Here, governmental control of flood waters was a substantial factor in causing the plaintiffs' damages. Plaintiffs allege they were harmed by FEMA's flood mapping activities. The Fourth Circuit summarized FEMA's flood mapping duties in *Columbia Venture, LLC v. Dewberry & Davis, LLC*:

> In 1968, Congress established the National Flood Insurance Program ("NFIP") in response to recurring flood disasters that were "placing an increasing burden on the Nation's resources." 42 U.S.C. § 4001(a). In the face of the high risk of such disasters, private insurance companies were not offering flood insurance on flood-prone property. Congress responded to this increasing problem by creating the NFIP which (1) makes federally subsidized flood insurance available in flood-prone areas and (2) *encourages states and localities to adopt land use policies and regulations that reduce the risk of flood damage*. [Section] 4001(a)-(e)). In order for communities to be eligible for federal flood insurance under the NFIA, *they are required to adopt community floodplain ordinances in accordance with flood hazard maps promulgated by FEMA*. [Section] 4012(c).
>
> FEMA is responsible for administering the NFIP and, in doing so, it maps flood elevations to identify flood hazards. *See* 42 U.S.C. §§ 4011, 4101. FEMA is authorized to hire private contractors to carry out studies and investigations on its behalf. [Section] 4102(a). FEMA is expected to constantly reappraise the program and to expeditiously identify and disseminate information about flood-prone areas. *See* §§ 4001(e)(5), 4002(b)(2).

604 F.3d 824, 830 (4th Cir. 2010) (citations and quotation marks omitted) (emphasis added). FEMA's floodplain mapping activities are an attempt to control the "damage[s] from or by floods or flood waters at any place" within the meaning of the Flood Control Act's sovereign immunity provision. 33 U.S.C. § 702c.

Plaintiffs argue that the reach of § 702c is limited to governmental activities with respect to "actual levees, dams, locks, and other flood control devices." (Doc. 58, p. 8.) The court in

5

*Britt v. United States* explicitly rejected this argument. 515 F.Supp. 1159 (M.D. Ala. 1981). Like in this case, the property owners in *Britt* alleged FEMA negligently prepared and circulated inaccurate floodplain mapping on which the owners relied to their detriment. *Id.* at 1160. The court held that "flood immunity is not limited to . . . actions taken in connection with such physical flood control structures as dams, dikes, and levees." *Id.* at 1161. Rather, the court reasoned, § 702c applied to floodplain mapping because it was integral to "congressionally mandated flood control initiatives." *Id.* at 1162. The Court agrees with *Britt*, as other courts have done under similar circumstances. *See also Kmart Corp. v. Kroger Co.*, No. 1:11-CV-00103-GHD, 2012 WL 2126953 (N.D. Miss. 2012) (following *Britt* and holding that FEMA had sovereign immunity under § 702c from a claim of negligent floodplain mapping); *Weitzman v. Pima Cty.*, No. CV-09-037-TUC-DCB, 2009 WL 10673566 (D. Ariz. 2009) (same).

Plaintiffs also argue that applying § 702c beyond physical flood control structures "is unsupported by the plain language of the statute." (Doc. 58, p. 6.) This Court disagrees. "[W]hen Congress entered upon flood control . . . it safeguarded the United States against liability of any kind for damages from or by floods or flood waters in the broadest and most emphatic language." *Nat'l Mfg. Co. v. United States*, 210 F.2d 263, 270 (8th Cir. 1954). Although various factors may have contributed to Plaintiffs' damages, they would not have been damaged but for the flooding of their property, and FEMA's alleged negligence arose out of its attempt to control the negative effects of flooding. *See In re Katrina Canal Breaches Litig.*, 696 F.3d 436, 444 (5th Cir. 2012) ("the government enjoys immunity only from damages caused by floodwaters released on account of flood-control activity or *negligence therein*.") (emphasis added). The Court believes this is the kind of situation Congress sought to capture when it provided immunity "for any damage from or by floods or flood waters at any place." 33 U.S.C. § 702c. Accordingly, § 702c bars all of Plaintiffs' claims and potential claims against FEMA.

### C. Sovereign Immunity Waiver under the FTCA

Even if § 702c of the Flood Control Act did not apply, Plaintiffs' claims and potential claims against FEMA must also be dismissed for several other reasons. Specifically, regarding their actual and proposed FTCA claims against FEMA (Counts II, VII, and IX), Plaintiffs have failed to demonstrate a waiver of sovereign immunity under the FTCA.

"Absent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). The FTCA gives this Court jurisdiction over:

> civil actions on claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1).

The FTCA's sovereign immunity waiver provides, in relevant part, that "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances . . . ." 28 U.S.C. § 2674. There are several exceptions to this sovereign immunity waiver, including for misrepresentation claims, 28 U.S.C. § 2680(h), and claims based on discretionary governmental functions, *id.* § 2680(a).

### 1. The Misrepresentation Exception to the FTCA's Immunity Waiver

The claims against FEMA in Count II and proposed Count VII are barred by the misrepresentation exception, which provides that the FTCA's immunity waiver "shall not apply to . . . [a]ny claim arising out of . . . misrepresentation [or] deceit." 28 U.S.C. § 2680(h). This exception applies to both negligent and willful misrepresentations. *United States v. Neustadt*, 366 U.S. 696, 702 (1961). Plaintiffs concede that the misrepresentation exception applies to their claim against FEMA in Count II. (Doc. 58 at 5.) Accordingly, the pending claim against FEMA in Count II is barred by sovereign immunity.

In proposed Count VII, Plaintiffs seek leave to amend the Complaint to add a general negligence claim against FEMA. FEMA argues that the Court should deny Plaintiffs leave to add this claim on futility grounds because it still falls within the misrepresentation exception despite its label. The Court agrees with FEMA.

#### a. Standard for Leave to Amend

The Court "should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court has discretion over whether to allow an amendment, and it may deny a motion to amend based on futility grounds. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Jackson v. Riebold*, 815 F.3d 1114, 1122 (8th Cir. 2016). "[A]mending is futile if the amended complaint does not meet

7

pleading requirements." *Liscomb v. Boyce*, 954 F.3d 1151, 1156 (8th Cir. 2020). "When the court denies leave on the basis of futility, it means the district court has reached the legal conclusion that the amended complaint could not withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure." *Munro v. Lucy Activewear, Inc.*, 899 F.3d 585, 589 (8th Cir. 2018) (cleaned up); *see also Norbeck v. Davenport Cmty. Sch. Dist.*, 545 F.2d 63, 70 (8th Cir. 1976).

Plaintiffs argue, "[a]bsent an attempt to assert a frivolous or patently insufficient claim or defense . . . the Court should not consider the merits of a proposed amendment in determining whether to grant leave to amend." (Doc. 80 at 1 (citing *Gamma-10 Plastics, Inc. v. Am. President Lines, Ltd.*, 32 F.3d 1244, 1256 (8th Cir. 1994)). The Court disagrees, given that earlier and more recent Eighth Circuit cases hold to the contrary—namely, *Liscomb*, *Munro*, and *Norbeck*. *See Mader v. United States*, 654 F.3d 794, 800 (8th Cir. 2011) (en banc) (instructing Eighth Circuit panels to follow the earliest panel opinion); *see also College Craft Cos., Ltd. v. Perry*, No. CIV. 3-95-583, 1995 WL 783612, at *5 (D. Minn. Aug. 9, 1995) (recognizing the tension between *Gamma-10* and *Norbeck* and following *Norbeck*). *Accord Stripling v. Jordan Prod. Co., LLC*, 234 F.3d 863, 873 (5th Cir. 2000) (joining the First, Third, Seventh, and Eleventh Circuits in applying the motion-to-dismiss futility standard).

In reviewing a Rule 12(b)(6) motion, the Court "take[s] the factual allegations in the complaint as true and afford[s] the non-moving party all reasonable inferences from those allegations." *Munro*, 899 F.3d at 589. The Court may also deny leave to amend on futility grounds if the proposed claim would be barred by sovereign immunity. *See Croyle by & through Croyle v. United States*, 908 F.3d 377, 381 (8th Cir. 2018) (sovereign immunity goes to subject-matter jurisdiction); *Longie v. Spirit Lake Tribe*, 400 F.3d 586, 589 n.3 (8th Cir. 2005) (subject-matter jurisdiction required to surpass futility).

### b. Proposed Count VII Falls within the Misrepresentation Exception to the FTCA's Immunity Waiver

Proposed Count VII alleges that FEMA was negligent in changing the property's base flood elevation in 2010 (before Plaintiffs bought the property) and then changing it back to within the 100-year floodplain in 2018 after the flood. (Doc. 75-1 at 30-31.) Two Supreme Court cases illustrate when a claim "aris[es] out of . . . misrepresentation" under 28 U.S.C. § 2680(h) and when it constitutes a different type of tort: *United States v. Neustadt*, 366 U.S. 696 (1961), and *Block v. Neal*, 460 U.S. 289 (1983).

In *Neustadt*, the plaintiffs sued the Federal Housing Administration ("FHA") after discovering structural problems with their new home. 366 U.S. at 696-701. The FHA had conducted an appraisal for mortgage-insurance purposes prior to the purchase, but the appraisal did not identify and disclose these defects to the plaintiffs. *Id.* The plaintiffs suggested that "the bar of § 2680(h) does not apply when the gist of the claim lies in negligence underlying the inaccurate representation, i.e., when the claim is phrased as one 'arising out of' negligence rather than 'misrepresentation.'" *Id.* at 703. The Supreme Court rejected this argument on the ground that the plaintiffs' loss was caused by a breach of "the duty to use due care in obtaining and communicating information upon which [the plaintiffs] may reasonably be expected to rely in the conduct of [their] economic affairs." *Id.* at 706. The Supreme Court viewed this as the epitome of a negligent misrepresentation claim and held that the misrepresentation exception of § 2680(h) applied. *Id.* at 706-08 & nn.15-16; *see also Farmers State Sav. Bank v. Farmers Home Admin., A Div. of U.S. Dep't of Agric.*, 891 F.2d 200, 202 (8th Cir. 1989) (holding that a claim was barred because the crux of the claim was "the communication of information on which [the plaintiff] relied to its detriment," and the plaintiff failed to show that the Government "negligently breached any different duty").

In contrast, the plaintiff in *Block* alleged that the Government assumed a duty under the "Good Samaritan" doctrine by undertaking to oversee construction of her home. 460 U.S. at 294. Distinguishing *Neustadt*, the Supreme Court held that the plaintiff's claim was not within the misrepresentation exception because it did not arise out of the Government's failure to use due care in communicating information to the plaintiff; rather, the claim arose from the Government's breach of a different duty. *Id.* at 294-99.

Here, Plaintiffs' proposed Count VII is more like the claims in *Neustadt* than the claim in *Block*. Plaintiffs do not specify any "duty" that the Government owed them aside from the usual duty not to misrepresent facts on which they relied. Their proposed claim simply says, "FEMA owed a duty to Plaintiffs." (Doc. 75-1 at 30 ¶ 108.)

Plaintiffs also allege (1) FEMA was negligent in "issu[ing] . . . the 2010 Change for the LOMA/LOMC," which took the house outside the 100-year floodplain and induced them to buy the property; and (2) FEMA was negligent in "chang[ing] . . . the BFE to pre-2010 levels" after the flood, which has now made it impossible to sell. The first assertion is the epitome of a negligent misrepresentation claim, and the second assertion is not an alternative theory that stands on its

9

own. This is apparent because Plaintiffs are not asserting that FEMA was negligent in placing the house within the 100-year floodplain. Their only theory is that the *correct* BFE places the house within the 100-year floodplain and Plaintiffs would not have bought the property if FEMA had only said so. (*See, e.g.*, Doc. 75-1, Proposed Second Amended Complaint at 11-12, 14, 16, 19 ¶¶ 50-57, 65, 78, 98 (consistently stating that the 2010 change was "incorrect" and "wrongful" and that "the true BFE should be 615 feet and *within the 100-year flood zone*") (emphasis added).) As pled, the crux of proposed Count VII is Plaintiffs' reliance on FEMA's communications. Accordingly, it falls within the misrepresentation exception to the FTCA's immunity waiver and is barred by sovereign immunity. *See Farmers State*, 891 F.2d at 202.

## 2. Discretionary Function Exception to the FTCA's Immunity Waiver

In addition, Plaintiffs' actual and proposed FTCA claims (Count II and proposed Counts VII and IX) against FEMA are barred by the discretionary function exception to the FTCA's liability waiver.

The discretionary function exception provides that the FTCA's sovereign immunity waiver does not apply to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused." 28 U.S.C. § 2680(a). This exception "marks the boundary between Congress' willingness to impose tort liability upon the United States and its desire to protect certain governmental activities from exposure to suit by private individuals." *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines)*, 467 U.S. 797, 808 (1984). Its purpose is to "prevent judicial 'second-guessing' of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort." *Id.* at 814.

The Court uses a two-part test to decide whether the discretionary function exception applies. *Buckler v. United States*, 919 F.3d 1038, 1045 (8th Cir. 2019); *see generally Bass v. United States*, 428 F. Supp. 3d 162, 167 (W.D. Mo. 2019). First, the Court asks "whether the challenged conduct or omission is truly discretionary"—that is, "whether it involves an element of judgment or choice instead of being 'controlled by mandatory statutes or regulations.'" *Buckler*, 919 F.3d at 1045 (quoting *United States v. Gaubert*, 499 U.S. 315, 328 (1991)). Second, if the challenged conduct is truly discretionary, the Court asks "whether the government employee's

10

judgment or choice was based on considerations of social, economic, and political policy." *Id.* (cleaned up). Both prongs are satisfied here.

### a. Floodplain Mapping Is Discretionary

Plaintiffs have not directed the Court's attention to any mandate that required FEMA to act differently in designing its flood maps. *See id.* at 1044 (holding that plaintiffs "bear[] the burden of proving the existence of subject-matter jurisdiction") (quotation marks and citation omitted); *Gaubert*, 499 U.S. at 324-25 (stating that plaintiffs "must allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime.").

It is also apparent from the relevant statutes and regulations that FEMA has discretion in issuing and updating floodplain maps. In relevant part, 42 U.S.C. § 4101 provides as follows:

> **(a) Publication of information; establishment of flood-risk zones; estimates of flood-caused loss**
>
> The Administrator [of FEMA] *is authorized* to consult with, receive information from, and enter into any agreements or other arrangements with [various other government agencies] or enter into contracts with any persons or private firms, in order that he *may*—
>
>> (1) identify and publish information with respect to all flood plain areas . . . and
>>
>> (2) establish or update flood-risk zone data in all such areas . . . .
>
> . . . .
>
> **(e) Review of flood maps**
>
> Once during each 5-year period . . . *or more often as the Administrator determines necessary*, the Administrator shall *assess* the need to revise and update all floodplain areas and flood risk zones identified, delineated, or established under this section, *based on an analysis of all natural hazards affecting flood risks*.
>
> **(f) Updating flood maps**
>
> The Administrator shall revise and update any floodplain areas and flood-risk zones--
>
>> (1) *upon the determination of the Administrator*, according to the assessment under subsection (e), that revision and updating are *necessary* for the areas and zones; or
>>
>> (2) upon the request from any State or local government stating that specific floodplain areas or flood-risk zones in the State or locality need revision or updating, *if sufficient technical data justifying the request is submitted* and

11

the unit of government making the request agrees to provide funds *in an amount determined by the Administrator*.

42 U.S.C. § 4101 (emphasis added). These provisions and various others illustrate that FEMA has discretion in its flood mapping activities.[3]

Generally, use of the word "may" suggests discretion, while "shall" suggests a mandatory duty. *Hurst v. United States*, 882 F.2d 306, 309 (8th Cir. 1989). Although many of the statutes cited above use "shall" to generally describe FEMA's duty to update its flood hazard maps, each time "shall" is used, it is conditioned on an exercise of FEMA's discretion. *See Powers v. United States*, 996 F.2d 1121, 1125 (11th Cir. 1993) ("shall" followed by "from time to time take such action as may be necessary" prescribes a discretionary function). The challenged conduct here involves an element of judgment or choice and is not controlled by a mandatory statute or regulation. *Kmart Corp. v. Kroger Co.*, No. 1:11-CV-00103-GHD, 2012 WL 2126953, at *10 (N.D. Miss. June 11, 2012) (finding that the language of § 4101 "shows Congress's intent to leave flood mapping determinations to the discretion of FEMA."). Therefore, the first prong of the discretionary-function test is satisfied.

### b. Floodplain Mapping is Based on Considerations of Social, Economic, and Political Policy.

To satisfy the second prong of the test, the challenged acts must be "based on the purposes that the regulatory regime seeks to accomplish" and "grounded in regulatory policy." *Gaubert*, 499 U.S. at 325 n.7. "[R]un-of-the-mill torts, . . . while tangentially related to some government program, are not sufficiently 'grounded in regulatory policy' so as to be shielded from liability." *Kohl v. United States*, 699 F.3d 935, 943 (6th Cir. 2012). "[I]f discretion exists, a presumption arises that the discretion is grounded in policy considerations, and the plaintiff must rebut this presumption." *Buckler*, 919 F.3d at 1046 (cleaned up).

---

[3] For example, 42 U.S.C. § 4101b directs FEMA to "make *estimates* with respect to the rates of probable flood caused loss for the various flood risk zones for each such area," *id.* § 4101b(b)(1)(B) (emphasis added), "use . . . the most accurate topography and elevation data available," *id.* § 4101b(b)(1)(C), use "the most up-to-date geospatial technologies in accordance with guidelines and specifications *of [FEMA]*," *id.* § 4101b(2)(A) (emphasis added), and use "*any relevant information* of the United States Geological Survey on [certain specific issues] that is *useful* in the identification of flood hazard areas, *as determined by the Administrator*," *id.* § 4101b(3)(B) (emphasis added). *See also* 44 C.F.R. § 65.6(a)(1) (stating that FEMA "will process a revision to the SFHA using the criteria set forth under § 65.6," which requires submitting "all the information FEMA needs to review and evaluate the request").

Plaintiffs fail to rebut the presumption. They allege that FEMA "intended to cause injury to" them and that "[t]here is no justification, and has never been any justification, for the 2010 Change." (Doc. 75-1 at 33 ¶¶ 184-85.) However, "as long as a discretionary decision is *susceptible* to policy analysis, the exception applies whether or not a defendant in fact engaged in conscious policy-balancing." *Buckler*, 919 F.3d at 1046 (cleaned up) (emphasis added).

Congress created the NFIP to "(1) make[] federally subsidized flood insurance available in flood-prone areas and (2) encourage[] states and localities to adopt land use policies and regulations that reduce the risk of flood damage." *Columbia Ventures*, 604 F.3d at 830. "FEMA is expected to constantly reappraise the program and to expeditiously identify and disseminate information about flood-prone areas." *Id.* (citing §§ 4001(e)(5), 4002(b)(2)). The challenged conduct here is grounded in regulatory policy, far from a "run-of-the-mill tort." *See Kmart Corp.*, 2012 WL 2126953, at *10. Accordingly, both prongs of the test are satisfied, and the discretionary function exception to the FTCA's immunity waiver bars all of Plaintiffs' actual and proposed FTCA claims against FEMA.

### D. Inverse Condemnation/Taking (Proposed Count VIII)

Assuming the Flood Control Act's sovereign immunity provision did not bar all of Plaintiffs' claims against FEMA, Plaintiffs also assert a non-FTCA claim in proposed Count VIII. Proposed Count VIII alleges that FEMA's actions "rise to the level of a permanent taking" in violation of the Constitution. (Doc. 75-1 at 31-32.) This claim, however, would not be properly before this Court because the Tucker Act grants the Court of Federal Claims exclusive jurisdiction over such claims.

Under the Tucker Act, "claims against [the] United States exceeding $10,000 founded upon [the] Constitution . . . are in [the] exclusive jurisdiction of Court of Federal Claims." *Mullally v. United States*, 95 F.3d 12, 14 (8th Cir. 1996) (citing 28 U.S.C. § 1491) (additional citation omitted). This rule applies to claims against both "the United States and its agencies." *State of Minn. by Noot v. Heckler*, 718 F.2d 852, 857 (8th Cir. 1983). Here, Plaintiffs have requested $1.5 million in damages from FEMA. (Doc. 1-1 at 1.) Accordingly, this Court would lack subject-matter jurisdiction over proposed Count VIII.

13

## II. Claims Against John Doe as an Agent of FEMA

### A. Misrepresentation (Count II)

In Count II, Plaintiffs allege that John Doe is liable as "the individual or individuals responsible for the 2010 Change" and that he was acting as "an agent of FEMA and/or STARR." (Doc. 31 at 5-6 ¶ 17, 18 ¶ 35.) This claim is barred by the Westfall Act's amendment to the FTCA, which provides as follows:

> The remedy against the United States provided by sections 1346(b) and 2672 of this title for injury or loss of property, or personal injury or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment is *exclusive of any other civil action* or proceeding for money damages by reason of the same subject matter *against the employee whose act or omission gave rise to the claim* or against the estate of such employee. . . .

28 U.S.C. § 2679(b)(1) (emphasis added). Here, Plaintiffs allege that John Doe's acts gave rise to Count II. Therefore, § 2679(b)(1) bars this claim against him.

### B. Violations of 42 U.S.C. §§ 1983, 1985, and 1986 (Count III)

In Count III, Plaintiffs allege that John Doe, as either an agent of FEMA or STARR, conspired with the Bushners to take Plaintiffs' property in violation of 42 U.S.C. §§ 1983, 1985, and 1986. (Doc. 31 at 23 ¶ 120.) Plaintiffs have failed to state a claim under these statutes.

#### 1. Section 1983

Section 1983 applies only to conduct "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia . . . ." 42 U.S.C. § 1983. Plaintiffs allege that "all actions taken by John Doe[] were taken under the color of *federal* law," not state law. (Doc. 31 at 21 ¶ 115.) Accordingly, § 1983 does not apply here.

To the extent Count III can be construed as a *Bivens* action against a federal official for "taking" property, *see Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388, 395-96 (1971), it is precluded by the Tucker Act, 28 U.S.C. § 1491. "When alternative methods of relief are available, a *Bivens* remedy usually is not." *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1863 (2017). "[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action." *Id.* at 1858.

As a result, other district courts have declined to infer a *Bivens*-takings claim when relief under the Tucker Act is available. *See*, *e.g.*, *Wittmann v. United States*, 869 F. Supp. 726, 731 (E.D. Mo. 1994) ("Plaintiff has cited no statute which withdraws Tucker Act jurisdiction over his

14

claim for compensation and permits him to proceed with a *Bivens* takings claim at this time."); *Reunion, Inc. v. F.A.A.*, 719 F. Supp. 2d 700, 710 (S.D. Miss. 2010) ("[N]umerous cases have recognized that a plaintiff does not have an implied cause of action under *Bivens* for a Fifth Amendment takings claim because there is an express cause of action for such a claim under the Tucker Act."); *Anoushiravani v. Fishel*, No. CV 04–212–MO, 2004 WL 1630240, 8-9 (D. Or. July 19, 2004) ("Plaintiff does not have an implied cause of action under *Bivens* for a Fifth Amendment takings claim because he has an express cause of action for such a claim under the Tucker Act.") (citation omitted). This Court agrees with those decisions and declines to infer a *Bivens* remedy under the circumstances in this case. Accordingly, Plaintiffs have failed to state a claim against John Doe under § 1983 or *Bivens*.

### 2. Sections 1985 and 1986

Count III relies on the portion of § 1985(3) prohibiting a conspiracy to deny any person equal protection of the laws. (Doc. 31 at 22 ¶ 118.) "The language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). In other words, "[a] claim under this part of the section . . . requires proof of a class-based animus." *Federer v. Gephardt*, 363 F.3d 754, 758 (8th Cir. 2004). Here, Plaintiffs have not alleged that John Doe was motivated by any racial or class-based animus, so they have not stated a claim under § 1985.

Plaintiffs' § 1986 claim fails for the same reason. To maintain a § 1986 action, Plaintiffs "would have to prove that . . . [John Doe] had actual knowledge of a § 1985 conspiracy." *Brandon v. Lotter*, 157 F.3d 537, 539 (8th Cir. 1998). Because Plaintiffs have failed to plead a § 1985 conspiracy, they have not stated a claim under § 1986 either.

### III. Obstacle Preemption Bars the Misrepresentation Claim Against STARR and John Doe as an Agent of STARR (Count II)

In Count II, Plaintiffs allege that STARR (i.e., Stantec, Atkins, Dewberry, and John Doe as their agent) acted as FEMA's general contractor in creating the allegedly erroneous floodplain maps on which they relied when purchasing the property. (Doc. 31 at 18 ¶ 94.) As government contractors, STARR (and the Defendants that make up STARR) cannot be liable under the FTCA.

15

*United States v. Orleans*, 425 U.S. 807, 814 (1976). And to the extent Count II asserts state-law claims against STARR, the claims are preempted by federal law.[4]

STARR relies on "obstacle preemption." Obstacle preemption is a type of conflict preemption that applies "where the challenged state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Arizona v. United States*, 567 U.S. 387, 399 (2012) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1941)). This occurs where state law "interferes with the methods by which the federal statute was designed to reach this goal." *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987). "What is a sufficient obstacle is a matter of judgment, to be informed by examining the federal statute as a whole and identifying its purpose and intended effects." *Arizona*, 567 U.S. at 399 (quotation marks and citation omitted).

Although it appears the Eighth Circuit has not addressed this issue, the Fourth Circuit in *Columbia Venture* held that state-law tort claims against FEMA's contractors based on flood mapping activities are barred by obstacle preemption. 604 F.3d at 830. This Court agrees.

To carry out its mission of "constantly reapprais[ing] the program and . . . expeditiously identify[ing] and disseminat[ing] information about flood-prone areas," FEMA is "authorized to hire private contractors to carry out studies and investigations on its behalf." *Id.* (citing §§ 4001(e)(5), 4002(b)(2), 4102(a)). As discussed above, FEMA itself would enjoy more than one form of immunity for the same tort claims being asserted against STARR here, and imposing liability on STARR for the work it carries out on FEMA's behalf would likely result in imposing liability costs on FEMA through the back door. Either "[t]he cost of defending such claims against independent contractors . . . will be transferred to FEMA through increased contract fees," or FEMA will simply "decline to contract." *Id.* at 831. Given that FEMA is specifically authorized to hire contractors, forcing it to either perform the work itself or pay the cost of liability would "interfere[] with the methods by which the federal statute was designed to reach [its] goal." *Int'l Paper Co.*, 479 U.S. at 494; *see also Peal v. N. Carolina Farm Bureau Mut. Ins. Co.*, 212 F. Supp. 2d 508, 515-17 (E.D.N.C. 2002) (finding bad-faith claims against private flood insurance

---

[4] Although only Atkins and Stantec move to dismiss on preemption grounds, the same logic would apply to the third STARR Defendant (Dewberry) as well. Accordingly, the Court need not address Dewberry's argument in its separate motion to dismiss (Doc. 50) that it was not a part of STARR when the alleged misrepresentations occurred in 2010.

companies were preempted by the NFIA due to the need for uniformity, encouragement of participation by private companies, and protection against financial burdens on the government).

Accordingly, the claims in Count II against STARR and John Doe as its agent are barred by obstacle preemption.

## IV. Subject-Matter Jurisdiction

### A. Federal Question Jurisdiction

For all the claims discussed up to this point, the Court has had federal question jurisdiction, including the state-law claims against STARR and John Doe as an agent of STARR. 28 U.S.C. § 1331. Typically, parties invoke the Court's federal question jurisdiction when the cause of action at issue is "created by" federal law. *Grable & Sons Metal Prod., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 312 (2005). That is what happened here with respect to Plaintiffs' FTCA claims, constitutional takings claim, and statutory claims under §§ 1983, 1985, and 1986. These claims are created by federal law.

"There is, however, another longstanding, if less frequently encountered, variety of federal 'arising under' jurisdiction." *Id.* "[I]n certain cases[,] federal-question jurisdiction will lie over state-law claims that implicate significant federal issues," and the Court may "hear claims recognized under state law that nonetheless turn on substantial questions of federal law." *Id.* "[T]he question is, does [the] state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 314.

Here, Plaintiffs' state-law claims against STARR and John Doe as an agent of STARR necessarily raise the issue of whether FEMA's map changes were proper and based "on the most accurate topography and elevation data available" under the relevant federal statutes and regulations. 42 U.S.C. § 4101b(b)(1)(C). This is not an area of concern traditionally reserved to the states. It is a substantial federal question of whether the actions of a federal agency were correct, which deserves the "hope of uniformity that a federal forum offers on federal issues." *Grable*, 545 U.S. at 312; *see Bader Farms, Inc. v. Monsanto Co.*, No. 1:16-CV-299 SNLJ, 2017 WL 633815, at *3 (E.D. Mo. Feb. 16, 2017) (holding that state law claims against a federally regulated entity raised a substantial federal question because they depended on whether the agency decision was correct); *Roberts v. Discover Home Loans, Inc.*, No. 2:17-CV-01278-RMG, 2017 WL 3316047, at *1-5 (D. S.C. Aug. 3, 2017) (finding that state law claims against a bank for

failure to properly pay flood insurance premiums under the NFIP raised a substantial federal question). Accordingly, the Court has federal question jurisdiction over the state-law claims against STARR and John Doe.[5]

### B. Supplemental Jurisdiction

As to the remaining state-law claims against Corelogic, the Bushners, and the Bushners' realtors (Counts I, IV, V, and VI), the Court declines to exercise supplemental jurisdiction.

The Court has supplemental jurisdiction over all "claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). Here, the remaining claims are part of the same case or controversy as the federal claims, and the Court has supplemental jurisdiction. However, the Court may decline to exercise its authority to adjudicate these claims when it "has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c). "'[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims.'" *Keating v. Neb. Pub. Power Dist.*, 660 F.3d 1014, 1019 (8th Cir. 2011) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

Here, these factors weigh in favor of declining to exercise supplemental jurisdiction. Unlike the claims against FEMA, STARR, and John Doe, the remaining claims do not turn on the uniquely federal issue of whether FEMA acted properly in mapping the floodplain. Rather, the claims against Corelogic are based on its alleged misrepresentations about the floodplain status of the property and changes FEMA made; the claims against the Bushners are based on their alleged misrepresentations about the floodplain status and flood history of the property; and the claims against the Bushners' realtors are based on alleged misrepresentations about the property's flood history and common practices for real estate sellers' disclosures. These are run-of-the-mill state-law claims, and adjudicating them will require no expertise on the intricacies of floodplain mapping. Furthermore, nothing prevents the parties from using the discovery obtained while this

---

[5] Even if the Court did not have federal question jurisdiction over these claims, it would have supplemental jurisdiction over them under 28 U.S.C. § 1367, and in light of the substantial federal interests at stake, the Court would exercise its discretion to rule on these claims.

case was pending upon refiling the case in state court, where these claims are properly adjudicated.[6]

Upon consideration of all relevant factors, the Court declines to exercise supplemental jurisdiction over the remaining claims.

## Conclusion

Accordingly, the Court **ORDERS** as follows:

1. FEMA's motion to dismiss for lack of subject-matter jurisdiction based on sovereign immunity (Doc. 33) is **GRANTED**. The claims in Count II against FEMA are **DISMISSED** for lack of subject-matter jurisdiction.

2. Plaintiffs' motion for leave to amend the complaint (Doc. 75) is **DENIED**.

3. The claims in Counts II and III against John Doe are **DISMISSED** for failure to state a claim upon which relief can be granted.

4. Atkins' and Stantec's motion to dismiss under the doctrine of obstacle preemption (Doc. 53) is **GRANTED**. The claims against all STARR Defendants (Atkins, Stantec, and Dewberry) are **DISMISSED** for failure to state a claim upon which relief can be granted.

5. The Court declines to exercise supplemental jurisdiction over the remainder of the case. Therefore, the case is **DISMISSED** for lack of subject-matter jurisdiction.

6. The remaining pending motions, which include the following, are **DENIED as moot**:

    a. Dewberry's separate motion to dismiss for failure to state a claim (Doc. 50);

    b. Plaintiffs' motion for default judgment against the Bushners (Doc. 46); and

    c. The Bushners' motions to dismiss (Docs. 48, 49).

**IT IS SO ORDERED**.

DATED: April 26, 2021

s/ Roseann A. Ketchmark
ROSEANN A. KETCHMARK, JUDGE
UNITED STATES DISTRICT COURT

---

[6] In assessing the fairness of dismissal for lack of jurisdiction, the Court assumes the relevant statutes of limitations have not run on Plaintiff's claims and expects the parties to raise this issue to the Court's attention if this assumption is incorrect. *See* Mo. Rev. Stat. § 516.120(5) (five-year statute of limitations for fraud claims); *Branstad v. Kinstler*, 166 S.W.3d 134, 136 (Mo. App. 2005) (five-year statute of limitations for negligent misrepresentation claims under Mo. Rev. Stat. § 516.120(4)); *Ball v. Friese Constr. Co.*, 348 S.W.3d 172, 176 (Mo. App. 2011) (five-year statute of limitations for MMPA claims under Mo. Rev. Stat. § 516.120); *see also* Mo. Rev. Stat. § 516.230 (saving statute allows refiling claims within one year after a "nonsuit").